UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| DECATUR VENTURES, LLC, an Indiana Limited Liability Company; and TRENT D. DECATUR, an Individual, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| TRIAGE REALTY INVESTMENT, INC., an Indiana Corporation; JAMIE K. GOETZ, an Individual; TONYA S. (BLYTHE) HARVEY, an Individual; and MONA ORKOULAS, an Individual, | ) ) ) ) ) ) | 1:04-cv-0562-JDT-WTL |
| Intervenor Plaintiffs, | ) ) ) | |
| vs. | ) ) | |
| STAPLETON VENTURES, INC., an Indiana Corporation; NOVASTAR HOME MORTGAGE, INC., a Delaware Corporation; MICHAEL W. STAPLETON, an Individual; COURTENAY STOCKER, an Individual; MICHAEL L. JOHNSON, an Individual; and KIMBERLY DANIEL, an Individual, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**AMENDED ENTRY ON DEFENDANT'S MOTION TO DISMISS
SECOND AMENDED COMPLAINT (Doc. No. 188) AFTER
ARGUMENT ON COURT'S NOTICE (Doc. No. 249)[1]**

---

[1] This Entry is a matter of public record and will be made available on the court's web site.  However, the discussion contained herein is not sufficiently novel to justify commercial publication.  Moreover, this Entry arrives at a substantially different result from the court's May 17, 2006 Entry (Doc. No. 248), which also included a similar footnote cautioning against commercial publication.  The differing results further justify the court's caution against such publication of these Entries.

This matter comes before the court on a motion by Defendants, Courtenay Stocker and NovaStar Home Mortgage, Inc. (collectively, "NovaStar"), to dismiss the Plaintiffs', Trent D. Decatur and Decatur Ventures, LLC, and Intervenor Plaintiffs', Triage Realty Investment, Inc., Jamie K. Goetz, Tonya S. (Blythe) Harvey, and Mona Orkoulas (collectively, "Plaintiffs"), Second Amended Complaint (or the "Complaint") or to stay the proceedings pending joinder of necessary parties.  On May 17, 2006, the court issued an entry explaining that it would dismiss the Plaintiffs' claims against NovaStar pursuant to Federal Rule of Civil Procedure 12(b)(6) as barred by the doctrine of *in pari delicto*.  (*See* Doc. No. 248.)  It set oral argument for Plaintiffs to show cause why the court should not extend the doctrine of *in pari delicto* to bar all claims against the remaining defendants.  Although the Plaintiffs never moved the court to reconsider its decision, they used the oral argument, along with a written submission, to argue against the dismissal of the Plaintiffs' claims against all defendants, including NovaStar. After hearing argument on the matter and carefully reviewing the parties' briefs and supporting materials, the court finds as follows:

## I.     BACKGROUND

For a detailed summation of the facts alleged in the Second Amended Complaint, the court refers to its May 17, 2006 Entry (Doc. No. 248) granting NovaStar's and Stocker's motion to dismiss.

Subsequent to the court's May 17, 2006 Entry, the Plaintiffs submitted additional affidavits, attached to their brief in response to the court's order to show cause

(Document No. 255).  These factual assertions are not part of the Second Amended

Complaint and the court will not treat them as such for purposes of a Rule 12(b)(6)

motion.  Nonetheless, the court will briefly summarize the relative content of these

affidavits.  The affidavits address the Plaintiffs wrongdoings, as described by the court

in the May 17, 2006 Entry, and suggest that the Plaintiffs did not intentionally act to

defraud or intentionally commit any wrongdoings.  Specifically, the affidavits of Plaintiffs

Tonya Harvey, Jamie Goetz, and Mona Orkoulas assert that they provided Stocker with

accurate and truthful financial information and relied on Stocker to complete the

mortgage loan applications accurately according to the information that they supplied.

(Harvey Aff. ¶¶ 10-11, 16; Goetz Aff. ¶¶ 13-14; Orkoulas Aff. ¶ 8.)  Allegedly, they were

unaware that the loan applications included information that appears to be incorrect.

(Harvey Aff. ¶ 12; Goetz Aff. 14-15; Orkoulas Aff. ¶ 8.)

Decatur's affidavit also addresses the inaccuracies relating to his mortgage loan

applications, including his reported income.  As to his reported monthly income, which

increased from $7,759 on June 9, 2003, to $9,932 on June 27, 2003, to $12,000 on

September 25, 2003 (Reply Ex. 1), to $15,000 on September 26, 2003 (*id.*), Decatur

explained that his actually monthly income was $15,299.25 (according to the tax return

from the preceding year—2002).  (Decatur Aff. ¶ 11.)  Although he expressed regret for

not reporting his actual income, he explained that Stocker determined the reported

income amounts and that there was no harmful error because his actual monthly

income was greater than all reported income.[2]  (*Id.* ¶ 12.)  In addition, like the other

Plaintiffs, Decatur stated that Stocker completed the loan applications and, assuming

that Stocker had completed them truthfully and correctly, he merely signed them at

closing.  (*Id.* ¶¶ 17-20.)

## II.    STANDARD OF REVIEW

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the

complaint, not to resolve the case on the merits.  *See* 5B Charles Alan Wright & Arthur

R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004).  Dismissal is

appropriate only if "'it is clear that no relief could be granted under any set of facts that

could be proved consistent with the allegations.'"  *Ledford v. Sullivan*, 105 F.3d 354, 356

(7th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  When

considering such a motion, the court must accept as true all factual allegations in the

complaint and draw all reasonable inferences in favor of the plaintiff.  *Cole v. U.S.*

*Capital*, 389 F.3d 719, 724 (7th Cir. 2004); *Hentosh v. Herman M. Finch Univ. of Health*

*Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999).  Federal courts adhere

to a notice pleading regime, and as such a plaintiff need not plead facts so long as the

--------

[2]  This position appears to be in disaccord with the Plaintiffs' position in the Second Amended Complaint, which suggests that Decatur's mortgage loan applications were "fraudulent" (2nd Am. Compl. ¶ 31), and that Stocker "manipulated" his monthly income "to ensure approval" (*id.* ¶ 40, 208).  If Decatur's actual income was $15,299.25, as Decatur now asserts, then there would have been no need to manipulate the income to ensure approval—a truthful income statement would have been more than sufficient to ensure approval. Furthermore, in the Plaintiffs' response brief, the Plaintiffs seemingly acknowledge the falsity of Decatur's income statements: "A manipulation of Decatur's income infers falsity.  Stocker encouraged Decatur to state different amounts on subsequent submissions to lenders because she knew that the higher the number, the more likely the loan would close and she would get paid.  This inference is reasonable."  (Resp. Opp'n Mot. Dismiss 2nd Am. Compl. 28.)

defendant has at least minimal notice of the claim or claims being asserted.  Fed. R. Civ. P. 8; *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999).  That being said, "the court is not required to ignore facts alleged in the complaint that undermine the plaintiff's claim."  *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).  In addition, allegations of fraud (including those in a civil RICO action) are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) that requires a plaintiff to plead all averments of fraud with particularity.  *Id.*

## III.   DISCUSSION

### A.   *In Pari Delicto*

In the May 17, 2006 Entry, the court explained that it would dismiss the Plaintiffs' claims against NovaStar and Stocker as barred by the doctrine of *in pari delicto*.  After further reflection, and for the reasons stated below, the court now believes that it may have acted prematurely in applying the doctrine of *in pari delicto* at the pleading stage of the litigation,[3] and will amend its decision accordingly.

The doctrine of *in pari delicto* stands for the principle that "a plaintiff who has participated in wrongdoing may not recover damages resulting from the wrongdoing." Black's Law Dictionary 794 (7th ed. 1999).  This common law defense "derives from the Latin, *in pari delicto potior est conditio defendentis*: 'In a case of equal or mutual fault . .

---

[3]  Of course, the court's decision here does not bar the possibility of applying the doctrine of *in pari delicto* at the pleading stage in other cases in which it may be appropriate to do so.  *See, e.g., Knauer v. Jonathon Roberts Fin. Group, Inc.*, 348 F.3d 230 (7th Cir. 2003).

. the position of the [defending] party . . . is the better one.'"  *Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 306 (1985).  The doctrine of *in pari delicto* is based on the policy that "courts should not lend their good offices to mediating disputes among wrongdoers" and "denying judicial relief to an admitted wrongdoer is an effective means of deterring illegality."  *Id.*

In its classic formation, the *in pari delicto* defense had a more limited scope:

[T]he *in pari delicto* defense was narrowly limited to situations where the plaintiff truly bore at least substantially equal responsibility for his injury, because "in cases where both parties are in delicto, concurring in an illegal act, it does not always follow that they stand in pari delicto; for there may be, and often are, very different degrees in their guilt."

*Bateman*, 472 U.S. at 307 (quoting 1 J. Story, Equity Jurisprudence 304-05 (13th ed. 1886)).  The *Bateman* Court recognized that many courts had strayed beyond the doctrine's traditional limitations, "giv[ing] the *in pari delicto* defense a broad application to bar actions where plaintiffs simply have been involved generally in 'the same sort of wrongdoing' as defendants."  *Id.* (quoting *Perma Life Mufflers, Inc. v. Int'l Parts Corp.*, 392 U.S. 134, 138 (1968)).  In *Perma Life Mufflers*, and later in *Bateman*, the Court confined the application of this concept to the doctrine's traditional limitations, which require that the plaintiff bear "at least substantially equal responsibility for the violations he seeks to redress."  *Id.* at 311.  However, *Perma Life Mufflers* and *Bateman* involved alleged violations of federal anti-trust laws and federal securities laws, and the Court limited its holding to "litigation arising under federal regulatory statutes."  *Id.* at 308.

In this case, the Defendants allegedly violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.*, which does not fall within the category of a federal regulatory law.  Nonetheless, the Court's reasoning in those regulated areas may suggest that courts should focus on the traditional limitations of the *in pari delicto* defense.  *See Official Comm. Unsecured Creditors of PSA, Inc. v. Edwards*, 437 F.3d 1145, 1153-54 (11th Cir. 2006) (applying doctrine's traditional limitations, as set forth in *Bateman*, in a case involving alleged RICO violations).  The Defendants have not convincingly demonstrated that this court is authorized to apply the *in pari delicto* bar if the level of relative wrongdoing is not equivalent.  Accordingly, the court will apply the traditional limitations of the *in pari delicto* doctrine while analyzing the appropriateness of its application at this stage of the case.  Simply put, the court will apply the doctrine of *in pari delicto* now only if the facts, as alleged in the Second Amended Complaint and potentially provable thereunder, demonstrate that the Plaintiffs bear at least substantially equal or mutual responsibility for the violations they seek to redress.[4]

---

[4]  The *Bateman* Court included a second limitation: that preclusion of the suit would not significantly interfere with the policy goals of the federal statute (here, RICO).  472 U.S. at 310-11.  The court need not provide a detailed discussion of this limitation here.  However, the court notes that if the facts eventually confirm that the Plaintiffs (or any single Plaintiff) were substantially equal with the Defendants in their delicto, the application of *in pari delicto* would not likely violate public policy.  As Justice Harlan explained in his concurring opinion in *Perma Life Mufflers*, in the context of federal anti-trust laws, "[i]t seems to me a bizarre way to 'further the overriding public policy in favor of competition,' to pay violators three times their losses in doing what public policy seeks to deter them from doing. . . .  I should not think it a too 'fastidious regard for the relative moral worth of the parties,' to decline to sanction a kind of antitrust enforcement that rests upon a principle of well-compensated dishonor among thieves." 392 U.S. at 154 (citations omitted).

In the May 17, 2006 Entry, the court illustrated how the Second Amended Complaint, and the documents attached thereto, set forth certain wrongdoings by the Plaintiffs.[5]  However, the court gave too cursory consideration to the additional step described above—whether the Plaintiffs bear at least substantially equal or mutual responsibility for the violations they seek to redress, or in other words, whether the Second Amended Complaint preclusively foretells not only that the Plaintiffs were in delicto, but that they were also in pari delicto.  (May 17, 2006 Entry, Doc. No. 248, 14-15.)  For this reason, the court amends its entry and will look more deeply at this aspect of the doctrine with respect to the state of this case at this time.

In short, the alleged fraudulent scheme at issue in this case involved obtaining financing for homes at values that were highly inflated from the homes' actual values. The source of the scheme's income came from the inflated loans in the Plaintiffs' names.  In general, to obtain a mortgage loan, a party must demonstrate two basic qualifications: (1) that the amount of the mortgage loan equals no more than a certain percentage of the house's value (typically, 80%) so that the loan is not undersecured; and (2) that the individual receiving the mortgage loan has the financial resources to pay back the loan.  The Second Amended Complaint clearly alleges that the Defendants obtained the loans for the Plaintiffs by manipulating both of these requirements.  First, the Complaint alleges that NovaStar and Stocker arranged for appraisers to misrepresent, and highly inflate, the value of these homes.  According to

---

[5]  Or perhaps more accurately, principally by Plaintiffs Decatur Ventures and Trent D. Decatur.

the Complaint, the Plaintiffs were unaware of this part of the scheme and truly believed that the homes were worth the inflated price represented by the Defendants.  Second, the Complaint avers that the loan applicaitons were "fraudulent" (2nd Am. Compl. ¶ 31), and that NovaStar and Stocker "manipulated" the Plaintiffs' loan applications "to ensure approval" of the loans (*id.* ¶¶ 40, 208).  In the May 17, 2006 Entry, the court took issue with the Plaintiffs' involvement in this second portion of the scheme.[6]  The Complaint illustrates that the Plaintiffs, especially Decatur, helped the Defendants obtain the financing.  Specifically, the mortgage loan applications contained false information, including what appear to be false income statements and false information regarding the nature of the down payments.  The Plaintiffs signed these loan applications, and in doing so attested to the truth of the information therein.

This second part of the scheme (obtaining financing under false pretenses) may be no less important to the scheme than the first part (the inflating of the property values).  If one of the Plaintiffs, or all of them, was actively and intentionally involved in the second portion of the scheme, in which the mortgage companies were defrauded, then he or she may be equally at fault, or *in pari delicto*, with the Defendants.  In other words, if a plaintiff was intentionally involved in the submission of false information to the lenders and it is shown that the plaintiff's false information was material to the lender's decision to issue the loan, then such a plaintiff would be precluded from recovery under the *in pari delicto* doctrine.  In its previous Entry, the court found that the

---

[6]  For a detailed analysis of the Plaintiffs' wrongdoings, the court refers to its May 17, 2006 Entry.  (Doc. No. 248, at 11-14.)

Complaint alleged sufficient facts to find that the parties were intentionally involved in this second part of the scheme, and thus found the parties *in pari delicto*.  Upon further reflection, the court may have jumped the gun at this stage of the proceedings.  While the Complaint strongly hints that the Plaintiffs, or at least Decatur, were actively involved, the court not only must draw all reasonable inferences in favor of the Plaintiffs, but it must also consider whether under any provable set of facts, the Plaintiffs would be entitled to recover.  At the 12(b)(6) stage, the court is obligated to consider hypothetical yet realistically provable facts.  The May 17, 2006 Entry moved too quickly to the conclusion that the Plaintiffs cannot prove that they were unaware of and uninvolved in the submission of false information.[7]  Additionally, the court may have concluded too quickly that the false income and down payment information was material to the lender's decision.  Although it is a close call, the court cannot yet conclude that the only provable facts will show that the Plaintiffs were actively and intentionally involved in wrongdoing in a manner which bars them from proceeding to the next stage of this litigation.

Therefore, the court will not yet apply the doctrine of *in pari delicto* to bar the Decatur Plaintiffs' claims.  Moreover, the other Plaintiffs have not been shown to be conclusively foreclosed from proceeding further.  However, this ruling does not preclude the possibility that the doctrine may apply at a future point in this litigation.

---

[7]  And perhaps by the implications in the Notice of Oral Argument that all of the Plaintiffs had been involved in the submission of the type and caliber of information to lenders that Plaintiff Decatur had.

-10-

The court's retrenchment from its earlier across-the-board application of the *in pari delicto* doctrine to all of the Decatur claims requires that other arguments raised against the Second Amended Complaint now be addressed as follows.

**B.     Dismissal/Stay Under Rule 12(b)(7)**

NovaStar and Stocker argue that the court should dismiss or stay the suit pursuant to Federal Rule of Civil Procedure 12(b)(7) until the Plaintiffs join additional necessary parties.  The Second Amended Complaint does not name as defendants the appraisers (hereinafter, "Additional Appraisers") who conducted the appraisals for the properties located at 1622 Ringgold and 444 Gray.

Rule 12(b)(7) provides for dismissal of an action in which a litigant fails to join a necessary party under Rule 19.  Fed. R. Civ. P. 12(b)(7).  The Defendants have the burden of showing that the Plaintiffs have failed to join a necessary and indispensable party.  *Rotec Indus., Inc. v. Aecon Group, Inc.*, — F. Supp. 2d —, 2006 WL 1764418, at *1 (N.D. Ill. June 22, 2006); *Ploog v. HomeSide Lending, Inc.*, 209 F. Supp. 2d 863, 873 (N.D. Ill. 2002) ("The proponent of a Rule 12(b)(7) motion to dismiss has the burden of producing evidence which shows the nature of the absent party's interest and the protection of that interest will be impaired or impeded by the absence.").

To determine the Rule 12(b)(7) issue, the court must first determine whether the Additional Appraisers are necessary parties under Rule 19.  Under Rule 19, the court conducts a two-step inquiry:

-11-

> First, the court must determine whether a party is one that should be
> joined if feasible—called, in the old days, a "necessary" party.  To answer
> that question, the court must consider (1) whether complete relief can be
> accorded among the parties to the lawsuit without joinder, (2) whether the
> absent person's ability to protect its interest in the subject-matter of the
> suit will be impaired, and (3) whether any existing parties might be
> subjected to a substantial risk of multiple or inconsistent obligations unless
> the absent person joins the suit.  Only if the court concludes, based on
> those factors, that the party should be included in the action but it cannot
> be, must it go on to decide whether the litigation can proceed at all in the
> party's absence.  If there is no way to structure a judgment in the absence
> of the party that will protect both the party's own rights and the rights of
> the existing litigants, the unavailable party is regarded as "indispensable"
> and the action is subject to dismissal.

*Thomas v. United States*, 189 F.3d 662, 666 (7th Cir. 1999).

Under this test, the court first asks whether complete relief can be accorded among the parties to the lawsuit without joinder.  Here, there is no showing that the Plaintiffs will not be able to get the full relief they seek without these Additional Appraisers as parties.  In fact, the Plaintiffs concede that they "do not possess information at this time that indicates that the Additional Appraisers were involved in this scheme."  (Resp. Opp'n Mot. Dismiss 9.)  As for the Defendants, they have not sought relief from any party in this case, including the appraisers.  Accordingly, the court finds that the existing parties can find complete relief without the joinder of the Additional Appraisers.

Next, the court asks whether non-joinder will impair the Additional Appraisers' ability to protect their interest in the subject-matter of the suit.  This is not an issue here because the Additional Appraisers have not claimed (and neither has any party on their behalf) an interest in the lawsuit.

Finally, the court asks whether any existing parties might be subjected to a substantial risk of multiple or inconsistent obligations unless the absent person joins the suit.  The Second Amended Complaint contains two counts, negligence (count X) and fraud (count XIII), against the appraisers.  The court notes that most appraisers have already been dismissed from this action.  As to the remaining appraisers, Michael Johnson and Kimberly Daniel, there has been no showing that their interests will be affected by the joinder or non-joinder of the Additional Appraisers.  Johnson and Daniel were not involved with the same properties as the Additional Appraisers.  The claims against the other remaining Defendants (Stapleton, Stapleton Ventures, NovaStar, and Stocker) are separate claims than those brought against the appraisers.  Accordingly, there has been no showing how these Defendants would be subject to a substantial risk of multiple or inconsistent obligations unless the Additional Appraisers join the suit.

Rule 19 does not require joinder of the Additional Appraisers.  As such, the court will **DENY** the Defendants' Rule 12(b)(7) motion to dismiss.

### C.    Count I: 18 U.S.C. § 1962(c) RICO Violation

The Federal RICO statute prohibits various activities associated with the operation of an "enterprise" by means of a "pattern of racketeering activity."  18 U.S.C. § 1962(a)-(d).  Section 1962(c) provides that "[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . . ."

18 U.S.C. § 1962(c).  To state a claim under § 1962(c), the Plaintiffs must allege "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity."  *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001).  Even though the elements are straightforward, simply listing them will not suffice to state a § 1962(c) claim; rather, the Plaintiffs "must allege facts to support each element."  *Goren v. New Vision Int'l Inc.*, 156 F.3d 721, 727 (7th Cir. 1998).  In this case, NovaStar avers that the Plaintiffs' Second Amended Complaint is deficient with respect to each of the § 1962(c) elements.  As will be explained below, the court disagrees.

> 1.    *Conduct of an Enterprise*

The Plaintiffs allege that NovaStar took part in conducting an association-in-fact RICO enterprise.  In the court's March 21, 2005 Entry (Document No. 160) dismissing the Plaintiffs' First Amended Complaint, the court found that the "Plaintiffs have . . . sufficiently alleged an association-in-fact RICO enterprise" and "have sufficiently shown that NovaStar and Stocker played a part in conducting the alleged association-in-fact enterprise for purposes of § 1962(c)."  *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 839 & n.8 (S.D. Ind. 2005).  The court makes the same determination regarding the Second Amended Complaint and refers the parties to the court's reasoning as established in its previous entry.  *See id.* at 837-39.  Accordingly, the court will not dismiss the Plaintiffs' Second Amended Complaint on this ground.

2.    *Pattern of Racketeering Activity*

To successfully demonstrate a pattern of racketeering activity under RICO at the pleadings stage, a plaintiff must sufficiently allege: (1) two or more predicate acts; (2) that are related; and (3) that involve either a closed period of repeated conduct (closed-ended continuity) or present the threat of repetition in the future (open-ended continuity).  *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 142 F.3d 1041, 1048 (7th Cir. 1998).  In its prior entry, the court dismissed the Plaintiffs' § 1962(c) claim as alleged in the First Amended Complaint because it failed to sufficiently allege two predicate acts and it failed to satisfy the continuity component.  The Plaintiffs have attempted to cure the defects of the First Amended Complaint, but it remains a very close call for the court to make.  However, for the reasons stated below, the court finds that the Plaintiffs have sufficiently alleged a pattern of racketeering activity.

A "pattern of racketeering activity" consists of at least two predicate acts of racketeering committed within a ten-year time period.  18 U.S.C. § 1961(5).  In the present case, the Plaintiffs allege predicate acts of mail and wire fraud.  *See* 18 U.S.C. §§ 1341, 1343.  A civil RICO plaintiff must allege predicate acts of fraud with particularity.  Fed. R. Civ. P. 9(b).  To do so, the plaintiff "must allege 'the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff."  *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729 (7th Cir. 1998) (citing *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994)).

"Moreover, because a RICO plaintiff must allege *two* predicate acts of fraud, she must satisfy the requirements of Rule 9(b) twice."  *Id.*

The Second Amended Complaint asserts three separate acts by NovaStar in furtherance of the racketeering enterprise.  First, the Plaintiffs allege that NovaStar transmitted mortgage loan applications to lenders on or before the dates of the purchases, in violation of 18 U.S.C. § 1341 (mail fraud) or 18 U.S.C. § 1343 (wire fraud).[8]  In doing so, the Plaintiffs identify the person (Stocker) and the content (mortgage loan applications) of the act.  The Complaint provides only a general time-frame, but qualifies the lack of specificity by explaining that Stocker and NovaStar have that information in their possession.  The court recognizes that specificity requirements may be relaxed when the details are within the defendants' exclusive control.  *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).  Accordingly, this act qualifies as one predicate act of racketeering.

Next, the Plaintiffs aver that Stocker sent two e-mails, one on May 28, 2003 and the other on June 26, 2003, to Decatur directing him to write letters stating his monthly income—first at $7,759, and then at $9,932.  (2nd Am. Compl. Exs. D, F.)  The Plaintiffs also allege that Stocker sent two e-mails to Orkoulas on January 26, 2004, requesting additional information from Orkoulas to complete her loan application and requesting

---

[8]  The mail and wire communications do not need to be fraudulent in and of themselves. *See United States v. Ashman*, 979 F.2d 469, 482 (7th Cir. 1992) (citing *Schmuck v. United States*, 489 U.S. 705 (1989)).

her signature on a purchase agreement.  (*Id.* Exs. V-1, V-2.)  These e-mails appear to pass the specificity test and qualify as predicate acts of racketeering.

The Plaintiffs also allege that NovaStar transmitted a telephone facsimile on July 22, 2003, to an unknown lender, which included a handwritten note in which Decatur's monthly income increased to $10,600.  (*Id.* Ex. G-3.)  While this allegation lacks some specificity (it fails to state to whom NovaStar sent the facsimile), the Plaintiffs have attached a copy of the facsimile and it appears to be what the Plaintiffs allege it to be.

These allegations cure the deficiencies of the First Amended Complaint to the extent that the Plaintiffs have now alleged at least two related acts of racketeering.  The Plaintiffs must also satisfy the continuity component, which requires a showing that the predicate acts involve either a closed period of repeated conduct (closed-ended continuity) or present the threat of repetition in the future (open-ended continuity).  *Corley*, 142 F.3d at 1048.  For the same reasons set forth in the court's March 21, 2005 Entry, the Plaintiffs' Second Amended Complaint fails to establish closed-ended continuity.[9]  The court must now determine whether the Second Amended Complaint establishes open-ended continuity.

Open-ended continuity involves "predicate acts occurring over a short period of time so long as there is a threat that the conduct will recur in the future."  *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1049 (7th Cir. 1998).  To demonstrate that

---

[9]  For a more detailed analysis, the court refers to the March 21, 2005 Entry (Doc. No. 160, 23-26).  *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 844-45 (S.D. Ind. 2005).

such a threat exists, the Plaintiffs must show that: "(1) 'a specific threat of repetition

exists', (2) 'the predicates are a regular way of conducting [an] ongoing legitimate

business,' or (3) 'the predicates can be attributed to a defendant operating as part of a

long-term association that exists for criminal purposes.'" *Vicom, Inc.*, 20 F.3d at 782

(citations omitted).  Here, the Plaintiffs have shown that a specific threat of repetition

exists.  The alleged scheme with Decatur began in May 2003 and terminated in

December 2003.  By October 2003, the Defendants allegedly began the same scheme

with Harvey and Goetz, which terminated in November 2003.  Subsequently, in

December 2003, the Defendants allegedly began a similar scheme with Orkoulas, which

continued until March 2004.  The Defendants did not stop with just the first alleged

victim; instead, the Defendants continued to recruit more victims.  This shows that there

was no natural ending point to the scheme, and that there was a specific threat of

repetition.  *See id.* at 783 (holding that no specific threat of repetition existed where the

scheme had a clear and terminable goal).

For these reasons, the Plaintiffs have demonstrated open-ended continuity, and

have alleged sufficient facts to establish a pattern of racketeering.  Accordingly, the

court will **DENY** the Defendants' motion to dismiss the Plaintiffs' § 1962(c) claim.

### D.      Count II: 18 U.S.C. § 1962(a) RICO Investment Violation

A thorough review of Plaintiffs' Second Amended Complaint reveals that their

claim for relief under § 1962(a) against NovaStar and Stocker must be dismissed.

Under that provision,

> It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity . . . in which such person has participated as a principal . . . to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment of operation of, any enterprise which is engaged in . . . interstate or foreign commerce.

18 U.S.C. § 1962(a).  To state a claim for the violation of § 1962(a), a plaintiff must plead "the receipt of income from a pattern of racketeering activity, and the use of that income in the operation of an enterprise."  *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994).  As discussed above, the Plaintiffs have successfully pleaded a pattern of racketeering activity.  The issue is whether the Plaintiffs have pleaded, with specificity, that NovaStar and Stocker received income from the scheme, used that income in the operation of the enterprise, and that the use or investment of the income proximately caused the Plaintiffs' injuries.  *See id.* at 778 n.6; *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*, 373 F. Supp. 2d 829, 836 (S.D. Ind. 2005).

In this respect, the Second Amended Complaint focuses solely on Stapleton. (2nd Am. Compl. ¶ 185.)  It fails to plead with any specificity how NovaStar or Stocker used or invested their income, and how that use or investment proximately caused the Plaintiffs' injuries.  Accordingly, the court will **DISMISS** the Plaintiffs' § 1962(a) claim as to Defendants NovaStar and Stocker.

### E.    Count III: 18 U.S.C. § 1962(d) RICO Conspiracy Violation

Section 1962(d) of RICO makes it illegal for a person "to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section."  18 U.S.C. § 1962(d).  To

state a claim for conspiracy under § 1962(d), a plaintiff must allege that (1) the

defendant agreed to maintain an interest in or control of an enterprise or to participate in

the affairs of an enterprise through a pattern of racketeering activity, and (2) the

defendant further agreed that someone would commit at least two predicate acts to

accomplish those goals.  *Slaney v. Int'l Amateur Ath. Fed'n*, 244 F.3d 580, 600 (7th Cir.

2001).

The Second Amended Complaint alleges sufficient facts to support a § 1962(d)

claim.  The Complaint alleges that Stocker helped Stapleton develop the alleged

scheme (2nd Am. Compl. ¶ 24), that Stocker and Stapleton were constantly in contact

with one another during the time of the alleged scheme (*id.*), that Stocker and Stapleton

pre-determined the fraudulent values of the houses to be as much as double the market

values (*id.* ¶ 27), and that Stocker selected appraisers who were willing to meet the pre-

determined fraudulent values (*id.*).  Furthermore, as discussed above, the Second

Amended Complaint sufficiently alleges facts demonstrating that Stocker and NovaStar

committed at least two predicate acts in furtherance of the scheme.  As such, the

Complaint sufficiently states a claim under § 1962(d) and the court will **DENY** the

motion to the extent it seeks dismissal of count III.

### F.    Count IV: Indiana Racketeering Violations

The Plaintiffs assert a claim pursuant to Indiana's RICO statute in Count IV of

their Second Amended Complaint.  Ind. Code § 35-45-6-1 *et seq.*  Indiana's "baby

RICO" statute is modeled after the federal RICO statute, and federal law is relied upon

when interpreting and applying the Indiana act.  *Yoder Grain, Inc. v. Antalis*, 722 N.E.2d 840, 845 (Ind. Ct. App. 2000); *see also Directv v. Edwards*, 293 F. Supp. 2d 873, 879 (N.D. Ind. 2003).  As explained above, the Plaintiffs have sufficiently stated claims under § 1962(c), which correlates to Indiana's version at § 35-45-6-2(3).  To the extent that the Plaintiffs' claim IV seeks relief pursuant to § 35-45-6-2(3), the court will **DENY** the Defendants' motion to dismiss.  However, because the Plaintiffs have failed to state a claim under § 1962(a), the court will **GRANT** the Defendants motion to dismiss to the extent it seeks dismissal of all claims pursuant to § 35-45-6-2(1).

### G.    Count VI: Breach of Contract

Count VI of Plaintiffs' Second Amended Complaint is a claim for breach of contract against NovaStar.  Rule (9)(b)'s particularity requirement does not apply to a breach of contract claim, and thus the court returns to the realm of notice pleading.  Plaintiffs simply need to allege enough information so that NovaStar has at least minimal notice of the claim or claims being asserted.  *See* Fed. R. Civ. P. 8.  As a corollary, the court should dismiss this claim only if there is no set of facts under which NovaStar could be found to have breached its contract with Decatur.[10]

---

[10]  The Second Amended Complaint alleges the existence of a contract between NovaStar and Decatur.  It fails to allege that NovaStar entered into a contract with either Triage or Orkoulas.  Accordingly, the court will **DISMISS** Count VI to the extent that it seeks breach of contract damages on behalf Triage or Orkoulas.

The elements of a breach of contract claim under Indiana law are: (1) the existence of a contract; (2) defendant's breach thereof; and (3) damages.[11]  *Wilson v. Lincoln Fed. Sav. Bank*, 790 N.E.2d 1042, 1048 (Ind. Ct. App. 2003).  According to the Second Amended Complaint, Decatur and NovaStar entered into a Mortgage Loan Origination Agreement on June 6, 2003.  (*See* 2nd Am. Compl. ¶ 207 & Ex. E.)[12]  The Plaintiffs allege that the agreement required "Novastar to assist Decatur in procuring loans, assist with his financial needs and order and obtain appraisals on the subject matter properties." (*Id.* ¶ 207.)  They further allege that NovaStar breached the agreement by manipulating Decatur's monthly income, by notarizing the Power of Attorney agreements for Stapleton, and by ordering and obtaining fraudulent appraisals. (*Id.* ¶¶ 208, 209, 210.)  NovaStar argues that Plaintiffs' breach of contract claim fails because it does not allege the existence of a contractual duty that NovaStar has breached.

The court finds that Decatur has satisfied the pleading requirements for breach of contract.  Decatur alleges the existence of a contract, that Novastar breached the

---

[11]  The court will apply Indiana substantive law to Plaintiffs' state law claims. *Timmerman v. Modern Indus., Inc.*, 960 F.2d 692, 696 (7th Cir. 1992) ("[F]ederal courts exercising pendent or diversity jurisdiction must apply state law to matters of substantive law.").

[12]  The Plaintiffs attached Exhibit E to the Second Amended Complaint.  Exhibit E appears to be part of the June 6, 2003 Mortgage Loan Origination Agreement.  However, there is no indication, in the allegations or otherwise, that Exhibit E constitutes the entire loan agreement.  Accordingly, the court will not limit the scope of the agreement to the contents of Exhibit E, and the court will assume, for purposes of this Rule 12(b)(6) motion, that the agreement requires "Novastar to assist Decatur in procuring loans, assist with his financial needs and order and obtain appraisals on the subject matter properties," as alleged in the Second Amended Complaint.  (2nd Am. Compl. ¶ 207.)

contract, and that Decatur suffered damages from the breach.  Decatur does not point

to a specific contractual duty, but the law does not require such specificity at this point in

the litigation.  Accordingly, the court will **DENY** the Defendants' motion to dismiss count

VI to the extent that it seeks dismissal of Decatur's breach of contract claim.

### H.    Count IX: Negligence

In the court's March 21, 2005 Entry (Document No. 160) dismissing the Plaintiffs'

First Amended Complaint, the court found that the Plaintiffs adequately stated a claim

for negligence against NovaStar.  *Decatur Ventures, LLC v. Stapleton Ventures, Inc.*,

373 F. Supp. 2d 829, 848 (S.D. Ind. 2005).  The court makes the same determination

regarding the Second Amended Complaint and refers the parties to the court's

reasoning as established in its previous entry.  *See id.* at 848.  Accordingly, the court

will **DENY** the Defendants' motion to dismiss count IX.

### I.    Count XI: Fraud

Count XI of the Second Amended Complaint accuses NovaStar and Stocker of

committing fraud.  Specifically, the Plaintiffs claim that NovaStar and Stocker

misrepresented that the homes were undervalued, that they had obtained appraisals

that justified the reported purchase prices and the mortgages, and that they would

assist the Plaintiffs with their financial needs.  (2nd Am. Compl. ¶ 234.)  Being a fraud

claim, Rule 9(b)'s particularity requirement applies to Count XI.  This means the

Plaintiffs "must allege 'the identity of the person who made the misrepresentation, the

time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff.'" *Goren v. New Vision Int'l, Inc.*, 156 F.3d 721, 729 (7th Cir. 1998) (citing *Vicom, Inc. v. Harbridge Merch. Servs.*, Inc., 20 F.3d 771, 777 (7th Cir. 1994)).

The elements of fraud under Indiana law are: "(1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) causing the claimant to rely upon the misrepresentation to the claimant's detriment." *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004) (citation omitted). Under count XI, the Complaint lists three alleged material misrepresentations made by NovaStar and Stocker: "that the home(s) were undervalued, that they had obtain [sic] appraisals which justified the reported purchase prices and the mortgages obtained to finance those purchases, and that they would assist Plaintiffs with their financial needs."[13]  (2nd Am. Compl. ¶ 234.)

---

[13]  The second and third alleged misrepresentations are insufficient to support the fraud claim against NovaStar and Stocker.

Regarding NovaStar's and Stocker's representations that they had obtained appraisals that justified the reported purchase prices and the mortgages obtained to finance those purchases, the Plaintiffs fail to demonstrate that these representations were false. In fact, the Second Amended Complaint supports the truthfulness of these representations—according to the Complaint, NovaStar and Stocker obtained appraisals that justified the alleged inflated purchase prices. (*See, e.g.*, 2nd Am. Compl. ¶¶ 27-28.)  Thus, these representations are not false under the Second Amended Complaint and cannot support a fraud claim.

As to the last representation, that NovaStar and Stocker would assist the Plaintiffs with their financial needs, the Plaintiffs fail to plead any specifics regarding this representation. They fail to indicate when, how, and in what context NovaStar and Stocker made this representation. To "assist with financial needs" is a vague and ambiguous statement, and Rule 9(b) requires more.  As such, this representation, as alleged in the Complaint, is insufficient to support a fraud claim.

As to the first alleged misrepresentation, the court notes that under Indiana law, appraisals (and other similar statements placing a value on a home) are expressions of opinion, not statements of fact, and thus are not generally actionable under a fraud theory.  *See Kreighbaum v. First Nat'l Bank & Trust*, 776 N.E.2d 413, 421 (Ind. Ct. App. 2002); *Block v. Lake Mortgage Co., Inc.*, 601 N.E.2d 449, 451 (Ind. Ct. App. 1993); *see also Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, at 30-31 (Ind. Ct. App. 2005) ("The general rule is that statements of value are regarded as mere expressions of opinion."). Here, at first glance, NovaStar's alleged representations regarding the value of the homes appear to constitute mere expressions of opinion.  Thus, they would be insufficient to support a fraud claim.

Nonetheless, a closer look at the Second Amended Complaint reveals that, when the Plaintiffs allege that NovaStar and Stocker misrepresented to the Plaintiffs that the homes were undervalued, they appear to be alleging that the fraud committed by NovaStar and Stocker relates more closely to their representation ensuring the genuineness of the appraisals.  Specifically, the Plaintiffs allege that NovaStar and Stocker (with Stapleton) predetermined the purchase prices of the properties to be as much as double the market value.  (2nd Am. Compl. ¶ 27.)  Then, knowing that a genuine appraisal would not justify the purchase prices, Stocker sought and selected appraisers who were willing to appraise the properties at values that meet the predetermined purchase prices.  (*Id.* ¶¶ 27, 236.)  In other words, the Plaintiffs allege that NovaStar and Stocker represented that the purported appraisals were genuine appraisals, when in fact they were phony—the documents that Stocker and NovaStar

-25-

represented to be the appraisals are not so because they do not represent the genuine opinion of the appraiser regarding the property values.

Regardless, the Defendants maintain that, under *Block*, an appraisal can never form the basis of actionable fraud because it is a statement of opinion. *Block*, 601 N.E.2d at 452. The facts alleged against NovaStar and Stocker distinguish this situation from the general rule found in *Block*. Here, the Plaintiffs focus on whether the product of the appraiser is actually an appraisal. Stocker allegedly represented that the product was an appraisal. The Plaintiffs suggest that this was a misrespresentation because the appraiser's product did not represent the genuine opinion of the appraiser. Instead, Stocker hired the appraiser to prepare a product that purported to appraise the property at the predetermined value, but the appraisal value does not actually represent the genuine opinion of the appraiser. Thus, the alleged misrepresentation does not focus on the validity of the contents of the appraisal itself (as in *Block*), but rather the validity of Stocker's statement that the product actually represented the opinion, or appraisal, or the appraiser.

In this situation, the court agrees with the Plaintiffs: *Block* does not preclude a phony appraisal (that is, a product represented to be an appraisal but not actually representing the genuine opinion of the appraiser) from forming the basis of actionable fraud. *See ABN AMRO Mortgage Group, Inc. v. Maximum Mortgage, Inc.*, No. Civ. 1:04CV492, 2005 WL 1162889, at *5-*8 (N.D. Ind. May 16, 2005); 26 Williston on Contracts § 69:8 (4th ed. 2004) ("[A] professional appraiser is assumed to have superior knowledge regarding the valuation of property, and may be held liable for an opinion

respecting value when the appraisal is intentionally inaccurate and made to induce a buyer or lender to enter into a transaction.").

The Plaintiffs further allege that they relied on Stocker's misrepresentations to their detriment.  Their allegation of reliance is sufficient at this stage of the case.  It may turn out to be that, at a later stage of the case, the Plaintiffs will be unable to prove that the purported appraisals did not constitute the mere opinions of the appraisers, or that they actually relied on the appraisal value.  For purposes of the instant motion, however, the court must accept all well-pleaded allegations as true.  Applying this standard, the court cannot conclude beyond doubt that the Plaintiffs can prove no set of facts which would entitle them to relief based on the allegedly phony opinions purported as appraisals.

For these reasons, the court will **DENY** the Defendants' motion to dismiss count XI against NovaStar and Stocker.

## IV.    CONCLUSION

To summarize the court's primary ruling, the court amends its May 17, 2006 Entry (Doc. No. 248) and will **GRANT** in part and **DENY** in part the Defendants' motion to dismiss (Doc. No. 188).

The court **DENIES** the Defendants' motion to dismiss to the extent that it seeks dismissal against NovaStar and Stocker on count I (§ 1962(c)), count III (§ 1962(d)),

count IV (Ind. Code § 35-45-6-2(3)), count VI (breach of contract) against Decatur only, count IX (negligence), and count XI (fraud).

The court **GRANTS** the motion to dismiss to the extent that it seeks dismissal against NovaStar and Stocker on count II (§ 1962(a)).  It further **GRANTS** the motion on count IV to the extent it seeks dismissal of all claims under Indiana Code § 35-45-6-2(1), and on count VI to the extent it seeks dismissal of breach of contract claims by Intervenor Plaintiffs Triage, Goetz, Harvey, and Orkoulas.  Accordingly, the court will **DISMISS with prejudice** count II, the RICO investment claim, as to NovaStar and Stocker.  The Plaintiffs have had three opportunities to draft a complaint.  A court need not provide leave to amend the complaint if there is an apparent reason not to do so, such as "repeated failure to cure deficiencies by amendments previously allowed." *Looper Maint. Serv. Inc. v. City of Indianapolis*, 197 F.3d 908, 914 (7th Cir. 1999).  As such, the court will not grant further leave to amend the complaint.  Thus, pursuant to Federal Rule of Civil Procedure 54(b), the court finds no just reason to delay entry of judgment on this claim against NovaStar and Stocker.  The court directs the Clerk to enter judgment in favor of the Defendants NovaStar and Stocker on count II.

ALL OF WHICH IS ENTERED this 8th day of August 2006.

_____

John Daniel Tinder, Judge
United States District Court

Copies to:

-28-

Bruce E. Alexander
Weiner Brodsky Sidman Kider P.C.
alexander@wbsk.com

Gregory H. Coleman
Clark Coleman & Freeman
ccfnattys@aol.com

Neal Frederick Eggeson Jr.
Kopka Pinkus Dolin & Eads PC
nfeggeson@kopkalaw.com

Peter S. French
Lewis & Kappes
pfrench@lewis-kappes.com

Steven Kenneth Huffer
Huffer & Weathers
steve_huffer@hufferandweathers.com

Hannah Kaufman
Lewis & Kappes
hkaufman@lewis-kappes.com

Mitchel H. Kider
Weiner Brodsky Sidman Kider PC
kider@wbsk.com

Lia R. Lukaart
Goodin Abernathy & Miller
llukaart@gamlawyers.com

Terry L. Monday
Monday Rodeheffer Jones & Albright
tmonday@aol.com

Gary P. Price
Lewis & Kappes
gprice@lewis-kappes.com

Thomas Edward Rosta
Kopka Pinkus Dolin & Eads PC
terosta@kpdlawfirm.com

Cynthia G. Swann
Weiner Brodsky Sidman Kider PC
swann@wbsk.com

Robert D. Zink
Goodin Abernathy & Miller
rzink@gamlawyers.com

Magistrate Judge William T. Lawrence