UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DECATUR VENTURES, LLC, an Indiana Limited Liability Company; and TRENT D. DECATUR, an Individual, <br><br> Plaintiffs, <br><br> TRIAGE REALTY INVESTMENT, INC., an Indiana Corporation; JAMIE K. GOETZ, an Individual; TONYA S. (BLYTHE) HARVEY, an Individual; and MONA ORKOULAS, an Individual, <br><br> Intervenor Plaintiffs, <br><br> vs. <br><br> STAPLETON VENTURES, INC., an Indiana Corporation; NOVASTAR HOME MORTGAGE, INC., a Delaware Corporation; MICHAEL W. STAPLETON, an Individual; COURTENAY STOCKER, an Individual; and MICHAEL L. JOHNSON, an Individual, <br><br> Defendants. | 1:04-cv-0562-JDT-WTL |

**ENTRY ON DEFENDANT JOHNSON'S MOTION TO DISMISS AND/OR
MOTION FOR SUMMARY JUDGMENT REGARDING
THE SECOND AMENDED COMPLAINT (Doc. No. 197)**[1]

This matter comes before the court on a motion by Defendant Michael L.

Johnson to dismiss the Plaintiffs', Trent D. Decatur and Decatur Ventures, LLC, and

Intervenor Plaintiffs', Triage Realty Investment, Inc., Jamie K. Goetz, Tonya S. (Blythe)

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

Harvey, and Mona Orkoulas (collectively, "Plaintiffs"), Second Amended Complaint (or the "Complaint"), or, in the alternative, for summary judgment against the Plaintiffs. After carefully reviewing the parties' briefs and supporting materials, the court finds as follows:

**I.     BACKGROUND**

  **A.     General Scheme**

Essentially, the Plaintiffs claim that they were fraudulently induced into making investment purchases of residential real estate properties. The origins of this case can be traced to May 2003, when Plaintiff Trent D. Decatur and Defendant Stapleton Ventures, Inc. ("SVI") entered into a joint business venture wherein SVI would seek out under-valued residential properties for purchase. SVI would then approach the owners of these properties and negotiate for their sale. Decatur, as buyer, would then enter into "Offer to Purchase Real Estate" agreements with each of the sellers. SVI would front the down payments for each of the purchases.

Over the course of four months, Decatur purchased a total of eight properties (hereinafter the "subject properties") under this basic arrangement. SVI planned to rehabilitate the subject properties, manage them, and find tenants willing to rent them. Decatur took out mortgage loans on the subject properties and was responsible for making all mortgage payments. To finance the monthly mortgage payments, Decatur would invoice SVI, and SVI would then reimburse him from the rent collected on the

subject properties and pay him a percentage of the profits above the reimbursement figure, if any.

NovaStar, through its employee Courtenay Stocker, acted as mortgage broker for Decatur with respect to all of the subject properties. NovaStar's primary roles in this capacity were to order and obtain appraisals for each of the subject properties, assist Decatur in securing lenders for the mortgage loans, arrange for title work, and assist in the real estate closings. NovaStar arranged for appraisals on the subject properties for the purpose of helping Decatur obtain the necessary financing. NovaStar obtained appraisals from Defendants Johnson, Miller, Stow, Phillips, and Daniel.[2] NovaStar allegedly "signed off" on the appraisals at the corresponding closings.

In November 2003, Decatur began to perceive problems with his investment when SVI and Stapleton stopped payment on a check for that month's mortgage reimbursement. Despite Decatur's inquiries, Stapleton and SVI paid no further mortgage invoices. Stapleton eventually told Decatur that he (Stapleton) was no longer in the property management business.

At the heart of this matter are allegations that the Defendants arranged for the subject properties to be appraised at amounts far greater than their true market values, and that SVI failed to maintain or improve the properties in accordance with the parties'

---

[2] Appraisers Miller, Stow, Phillips, and Daniel were originally listed as Defendants. The court has since dismissed all claims against these appraisers. The Plaintiffs consented to dismissal of Miller, Stow, and Phillips; however, the court dismissed Daniel after granting summary judgment in her favor.

agreement.  As a result, SVI allegedly failed to make any payments or reimbursements to Plaintiffs Decatur and Decatur Ventures, leaving them, much to their pecuniary harm, to satisfy the mortgage payments on all of the subject properties out of their own pockets.  Intervenor Plaintiffs Triage, Goetz, Harvey, and Orkoulas claim to have been victimized by the same basic scheme.

**B.     Michael L. Johnson's Involvement**

Michael Johnson performed appraisals on the following three properties: 128 E. Pennsylvania St., Shelbyville; 126 E. Pennsylvania St., Shelbyville; and 3838 N. Kenwood Ave., Indianapolis.

With respect to the 128 E. Pennsylvania St. property, Johnson's appraisal, which is not signed, is dated June 6, 2003.  (2nd Am. Compl. Ex. I-2.)  The appraisal report lists Decatur as the "borrower," and NovaStar as the "Lender/Client."  (*Id.*)  Decatur purchased the property on June 20, 2003.  (*Id.* ¶ 54.)

The 126 E. Pennsylvania St. appraisal report, dated June 6, 2003, does not contain Johnson's signature.  (*Id.* Ex. J-2.)  The appraisal report lists Decatur as the "borrower," and NovaStar as the "Lender/Client."  (*Id.*)  Decatur purchased the property on June 30, 2003.  (*Id.* ¶ 61.)

The 3838 N. Kenwood Ave. appraisal report contains Johnson's signature, and it is dated May 28, 2003.  (*Id.* Ex. K-2.)  The appraisal report lists Joseph Provencio, not

Decatur, as the "borrower," but lists NovaStar as the "Lender/Client."  (*Id.*)  Decatur purchased the property on July 7, 2003.  (*Id.* ¶ 69.)

The Plaintiffs allege that Johnson had actual knowledge that Decatur would rely on his appraisal reports.  (*Id.* ¶ 258.)  Moreover, the Plaintiffs allege that NovaStar and Stocker (with Stapleton) predetermined the purchase prices of the properties to be as much as double the market value.  (2nd Am. Compl. ¶ 27.)  Then, knowing that a genuine appraisal would not justify the purchase prices, Stocker sought and selected appraisers, including Johnson, who were willing to appraise the properties at values that met the predetermined purchase prices.  (*Id.* ¶¶ 27, 236.)

## II.     MOTION TO DISMISS STANDARD

### A.     Treatment as Motion to Dismiss

Johnson moved the court to dismiss all of the claims against him pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative for summary judgment pursuant to Rule 56(b) and (c).  (Mot. Dismiss 1-2.)  When a motion for summary judgment is concerned only with the sufficiency of allegations in the complaint and not with factual material, then it is appropriate for the court to treat a motion for summary judgment as a motion to dismiss.  *Grzelak v. Calumet Pub. Co.*, 543 F.2d 579, 583 (7th Cir. 1975).  Here, Johnson's motion and the supporting brief lack factual material and rely solely on the pleadings.  As a result, the court will treat Johnson's motion as solely a motion to dismiss, not a motion for summary judgment.

**B.     Standard of Review**

The purpose of a Rule 12(b)(6) motion to dismiss is to test the sufficiency of the complaint, not to resolve the case on the merits. *See* 5B Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)). When considering such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004); *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999). Federal courts adhere to a notice pleading regime, and as such a plaintiff need not plead facts so long as the defendant has at least minimal notice of the claim or claims being asserted. Fed. R. Civ. P. 8; *Scott v. City of Chicago*, 195 F.3d 950, 951 (7th Cir. 1999). That being said, "the court is not required to ignore facts alleged in the complaint that undermine the plaintiff's claim." *Slaney v. Int'l Amateur Athletic Fed'n*, 244 F.3d 580, 597 (7th Cir. 2001). In addition, allegations of fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) that requires a plaintiff to plead all averments of fraud with particularity. *Id.*

**III.	DISCUSSION**

The Plaintiffs assert two claims against Mr. Johnson: negligence and fraud. Johnson seeks dismissal of both claims.

### A. Negligence

Under Indiana law, "in order to prevail on a claim of negligence the plaintiff must show: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty." *King v. N.E. Sec., Inc.*, 790 N.E.2d 474, 484 (Ind. 2003). "Duty is a question of law for the court to decide. Absent a duty, there can be no breach of duty and thus no negligence or liability based upon a breach." *Peters v. Forster*, 804 N.E.2d 736, 738 (Ind. 2004).

In this case, the Plaintiffs assert that Johnson owed a duty to the Plaintiffs to perform the appraisal work on the subject properties in a professional and workmanlike manner. (2nd Am. Compl. ¶¶ 229-30.) In response, Johnson argues that, under Indiana case law, his role as an appraiser did not create a duty to the Plaintiffs, who were the purchasers of the property.

As Johnson points out, *Emmons v. Brown*, 600 N.E.2d 133 (Ind. Ct. App. 1992), provides helpful guidance as to whether an appraiser owes a duty to the purchaser/borrower of a property. In *Emmons*, the purchasers of a home brought a negligence suit against the appraiser, claiming that the appraiser negligently conducted an appraisal of the house, thereby inducing them to purchase it. The appraiser's obligation to perform the appraisal stemmed from his employment relationship with the

Federal Housing Administration (FHA) as an appraiser. The purchasers acknowledged the absence of a contractual relationship between themselves and the appraiser, yet they asserted that the appraiser owed them a duty because they were third party beneficiaries to the appraiser's employment contract with FHA. In that case, the appraisal report identified the purchasers as the "owner/occupant" of the house and indicated that the report may be used by the borrower. Despite these provisions, the court refused to recognize a duty owed to the purchaser, holding that "[i]n Indiana, a professional owes no duty to one with whom he has no contractual relationship unless the professional has actual knowledge that such third person will rely on his professional opinion." *Emmons*, 600 N.E.2d at 135; *see also Block v. Lake Mortgage Co.*, 601 N.E.2d 449, 452 (Ind. Ct. App. 1993) (holding on the reliance issue that "Indiana requires actual knowledge on the part of the appraiser").

Following *Emmons*, the court must determine here whether Johnson had actual knowledge that the Plaintiffs would rely on his appraisal opinions. The Plaintiffs expressly allege that Johnson had actual knowledge that Decatur would rely on his appraisal reports. (2nd Am. Compl. ¶ 258.) At the 12(b)(6) stage of the litigation, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the Plaintiffs. Accordingly, the Plaintiffs have pleaded sufficient facts to demonstrate Johnson owed a duty to them. As such, the court will **DENY** Johnson's motion to dismiss the negligence claim (count X).[3]

---

[3] The court notes the difficulty the Plaintiffs will have in providing evidence of actual knowledge on the part of Johnson. The Plaintiffs will have to provide this type of evidence if the negligence claim will survive summary judgment at the next stage of litigation.

**B.     Fraud**

Under Count XIII of the Second Amended Complaint, the Plaintiffs claim that Johnson committed fraud by submitting false and fraudulent appraisal reports. The elements of fraud under Indiana law are: "(1) a material misrepresentation of past or existing facts; (2) made with knowledge or reckless ignorance of falsity; (3) causing the claimant to rely upon the misrepresentation to the claimant's detriment." *Tobin v. Ruman*, 819 N.E.2d 78, 86 (Ind. Ct. App. 2004) (citation omitted). The issue here is whether the appraisal reports are mere opinions, as Johnson argues, or whether they can constitute statements of fact.

Under Indiana law, appraisals are expressions of opinion, not statements of fact, and thus are not generally actionable under a fraud theory. *See Kreighbaum v. First Nat'l Bank & Trust*, 776 N.E.2d 413, 421 (Ind. Ct. App. 2002); *Block v. Lake Mortgage Co.*, 601 N.E.2d 449, 451 (Ind. Ct. App. 1993); *see also Wheatcraft v. Wheatcraft*, 825 N.E.2d 23, 30-31 (Ind. Ct. App. 2005) ("The general rule is that statements of value are regarded as mere expressions of opinion."). The Plaintiffs acknowledge the general rule in Indiana, but nevertheless attempt to distinguish this case from the general rule. Although not entirely clear, the Plaintiffs apparently attempt to attack the appraisals under two different theories: 1) that the facts providing the foundation of the appraisal opinions are false; or 2) that the appraisals do not actually represent Johnson's genuine opinion.

First, the Plaintiffs argue that when an appraiser supports the appraisal with underlying facts that are intentionally false, then the general rule should not apply. Following this theory, the Plaintiffs attack the factual foundation of the appraisers. For example, the Plaintiffs allege that Johnson used comparable homes and sales to form the foundation of his appraisal values, but that those comparable homes/sales were not actually comparable because they were located in superior neighborhoods or included superior features. (2nd Am. Compl. ¶ 252.) However, as Johnson indicates, Indiana courts have rejected similar attempts to sidestep the general rule holding appraisals as opinions. *See Block*, 601 N.E.2d at 451. In *Block*, the plaintiff attempted to avoid the general rule by defining the appraisal as "a compilation of facts gleaned by comparing the subject house to houses sold in the area," and arguing that those facts were false. *Id.* The court rejected the argument, explaining that "an appraisal of property is not the result of a scientific analysis, but is, rather, a subjective opinion which can and does differ from the next appraisal even though both may be based on current real estate market trends." *Id.* Following *Block*, this court must reject the Plaintiffs attempt to define the appraisal as a compilation of false facts underlying the actual opinion.

Nonetheless, *Block* does not preclude the Plaintiff's second theory: that the appraisals do not actually represent Johnson's genuine opinion. In the Second Amended Complaint, the Plaintiffs suggest that Stapleton, NovaStar, and Stocker predetermined the purchase prices of the properties to be as much as double the market value. (2nd Am. Compl. ¶ 27.) Then, knowing that a genuine appraisal would not justify the purchase prices, Stocker sought and selected appraisers (including

Johnson) who were willing to appraise the properties at values that meet the predetermined purchase prices regardless of the appraisers' genuine opinion of the value. (*Id.* ¶¶ 27, 236.) In other words, the Plaintiffs allege that the product that the Defendants purport to be the appraisal does not actually qualify as an appraisal because it does not represent the genuine opinion of the appraiser. If the Plaintiffs ultimately can prove that Johnson intentionally misrepresented the value of the properties in order to meet a predetermined price, and that the predetermined price clearly falls below where his genuine opinion would arrive, then *Block* would not preclude a fraud action based on Johnson's appraisal reports.

At the 12(b)(6) stage of the litigation, the court need not determine whether the Plaintiffs ultimately will be able to provide the evidence to prove these allegations against Johnson.[4] Instead, the court need only determine whether the Plaintiffs have pleaded with specificity these allegations. As set forth above, the Second Amended Complaint has pleaded with sufficient specificity that Johnson's appraisal reports do not represent his genuine opinion. Moreover, the Plaintiffs allege that they relied on Johnson's alleged misrepresentations to their detriment. (*Id.* ¶ 260.) Their allegation of

---

[4] Again, the court notes the difficulty that the Plaintiffs will face in providing such evidence. As part of the Second Amended Complaint, the Plaintiffs provide appraisal values from their retained appraiser, David Woods, whose appraisal values are far less than those supplied by Phillips and Daniel. The Plaintiffs compare the values between Johnson's appraisals and Woods's appraisals, and from the discrepancy in the appraised values, the Plaintiffs ask the court to make an inference that Johnson's appraisal values were not genuine. However, comparing appraisal reports from different appraisers is exactly the type of evidence that *Block* precludes. *Block*, 601 N.E.2d at 451 ("[O]ne need only examine eminent domain cases to realize that different appraisers can value properties at different amounts."). Under *Block*, the court cannot draw inferences of fraudulent conduct merely from evidence showing differing appraisal values from different appraisers. This evidence will be insufficient at the summary judgment stage.

reliance is sufficient at this stage of the case. It may turn out to be that, at a later stage of the case, the Plaintiffs will be unable to prove that the purported appraisals did not constitute Johnson's mere opinions, or that they actually relied on the appraisal value. For purposes of the instant motion, however, the court must accept all well-pleaded allegations as true. Applying this standard, the court cannot conclude beyond doubt that the Plaintiffs can prove no set of facts which would entitle them to relief based on the allegedly phony opinions purported as appraisals.

For these reasons, the court will **DENY** Johnson's motion to dismiss the Plaintiffs' fraud claim (count XIII).

### C.   Subject Matter Jurisdiction

The Plaintiffs bring a fraud claim and negligence claim against Johnson. These claims do not involve a federal question, but are based on state law. Johnson claims that the court lacks subject matter jurisdiction over these claims.

The Second Amended Complaint asserts jurisdiction under 28 U.S.C. §§ 1331 and 1367. Section 1331 grants the court jurisdiction over federal questions: "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Section 1367 grants the court supplemental jurisdiction over certain claims: "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original

jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

Johnson concedes that the court has original jurisdiction over the federal RICO claims, and has the discretion under § 1367(c) to exercise supplemental jurisdiction over the state law claims. However, Johnson suggests that the court, in its discretion, should decline to exercise supplemental jurisdiction over the state law claims against him because "there is no justifiable reason for this [c]ourt to retain jurisdiction over claims against Defendants who have no relationship to the federal question." (Br. Supp. Mot. Dismiss 10.) While the Plaintiffs do not bring the RICO claims against Johnson, the state law negligence and fraud claims against him certainly stem from the same facts and the same controversy giving rise to the federal claims.

In support of his argument against exercising supplemental jurisdiction, Johnson cites *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) and *Wright v. Associated Insurance Companies*, 29 F.3d 1244 (7th Cir. 1994) for the proposition that when a district court dismisses a plaintiff's federal claim before trial, it should dismiss any supplemental state law claim as well. The court agrees with this statement. However, this argument is premature because the federal RICO claims remain, at least at this point in time, a part of the case. As such, the court will elect to exercise supplemental jurisdiction over the state law claims pursuant to § 1367(a), and it will **DENY** Johnson's motion to dismiss for lack of subject matter jurisdiction.

IV.    **CONCLUSION**

For the foregoing reasons, the court **DENIES** Johnson's motion to dismiss (Doc. No. 197).

ALL OF WHICH IS ENTERED this 16th day of August 2006.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Bruce E. Alexander
Weiner Brodsky Sidman Kider P.C.
alexander@wbsk.com

Gregory H. Coleman
Clark Coleman & Freeman
ccfnattys@aol.com

Neal Frederick Eggeson Jr.
Kopka Pinkus Dolin & Eads PC
nfeggeson@kopkalaw.com

Peter S. French
Lewis & Kappes
pfrench@lewis-kappes.com

Steven Kenneth Huffer
Huffer & Weathers
steve_huffer@hufferandweathers.com

Hannah Kaufman
Lewis & Kappes
hkaufman@lewis-kappes.com

Mitchel H. Kider
Weiner Brodsky Sidman Kider PC
kider@wbsk.com

Lia R. Lukaart
Goodin Abernathy & Miller

llukaart@gamlawyers.com

Terry L. Monday
Monday Rodeheffer Jones & Albright
tmonday@aol.com

Gary P. Price
Lewis & Kappes
gprice@lewis-kappes.com

Thomas Edward Rosta
Kopka Pinkus Dolin & Eads PC
terosta@kpdlawfirm.com

Cynthia G. Swann
Weiner Brodsky Sidman Kider PC
swann@wbsk.com

Robert D. Zink
Goodin Abernathy & Miller
rzink@gamlawyers.com

Magistrate Judge William T. Lawrence